Take up the next case, Bradley v. Pradel, 516-0424. Counsel for the appellant, you may proceed. Thank you, Your Honor. Good morning. My name is John Baker, and I represent the appellant, James Bradley, in this appeal. May it please the Court, Counsel. This is a case about the discipline that was imposed to an Illinois State Police trooper, James Bradley. This goes back a number of years. We raised two ultimate issues in this case. The first one was, was the directive that was given to Mr. Bradley a reasonable directive? The second issue that we raised is whether the discipline that was ultimately imposed to the Illinois trooper, Bradley, reasonable under the circumstances of the case. This is a situation where there is not a tremendous amount of dispute about the critical facts of the case. There was a trial that was held, an evidentiary hearing that was held before an administrative law judge. The administrative law judge heard the evidence. The administrative law judge made a recommendation to the Illinois State Police Merit Board. The Illinois State Police Merit Board issued a determination, a disciplinary determination. At that point, the matter was appealed, an administrative review appeal that we took to the circuit court. After that, that decision was affirmed, and we appealed it to this Court. So we don't really challenge a lot of the underlying factual issues. What happened in this case was Mr. Bradley suffered from post-traumatic stress disorder. He was off for a period of time. How long was he off altogether? I'm sorry? How long was he off? I believe it was 30 months. I think, Your Honor, I believe it was about 30 months. There was a long period of time that he had been off. Wasn't the position kept open during that whole time? Yes, he was. Now, I think I should clarify that. Your Honor, I think, yes, his position was left open. His status throughout that period of time was that he was on a medical leave absence. And so I know that there are some arguments that they were forced to keep the position open. I don't believe that that's necessarily accurate. There's a headcount for the Illinois State Police. He was remaining on that headcount. However, our view of that is that they could have come in and overseen that and continually forced him to provide the fitness for duty evaluation. And if he wasn't fit for duty, they could have let him go. That was one of the options that was available to them. And that's part of the problem that we have with this case in the way that the Medical Review Board treated Mr. Bradley throughout these proceedings. What they did was they sent him for a fitness for duty evaluation. He went to the fitness for duty evaluation. It was a doctor that had been recommended by the Illinois State Police. This particular doctor stated that he found that he probably was unable to perform the job duties at that period of time and recommended that Mr. Bradley undergo symptom-focused treatment, which Mr. Bradley ultimately did. Now, there was communication between Mr. Bradley and the Medical Review Board well before 2013. Throughout 2012, there had been communications between Mr. Bradley and the Medical Review Board. What then happened was Mr. Bradley received a letter directing him to do two things. One of those was to receive the symptom-focused treatment, and the other was to provide evidence that he had indeed received the symptom-focused treatment. Two different things. When we went through the trial, the administrative law judge concluded that, based on the evidence, the allegation that he had not received the symptom-focused treatment had not been proved, that it seemed burdens on the State Police to prove that. They hadn't proved that he did not receive the treatment. So he found that that directive, there was enough proof to find that that directive had been violated. The next question was whether he had provided proof that he had received the symptom-focused treatment. I'm somewhat confused by this being an issue, whether or not they had the ability to direct the type of medical care that he was to receive, if, in fact, the court ruled that he received what was appropriate. Is it really your sole issue whether or not the discipline or FAR is not reporting under the directive? The sole issue? I really am confused how the other is still an issue. Well, and, Your Honor, I appreciate your inquiry. I think that one goes with the other. He was ordered to provide or to undergo symptom-focused treatment. Right. And then he was ordered to provide evidence that he had undergone symptom-focused treatment. But wouldn't he have been required to provide evidence of some type of treatment, any kind of treatment? Let's say if they hadn't directed him to undergo that specific type, he still would have been required to provide documentation, I presume. And I believe that's correct, Your Honor. So I'm still not understanding, then, what the symptom-focused treatment has to do with it. And let me explain my argument this way, Your Honor. The allegation against him wasn't that he failed to communicate or he didn't provide documentation that he had continued treatment. They very well could have forced him, under the Illinois State Police rules, to turn over medical records to them that could have forced him to provide a release of his medical records for them to review. That's not what they did. They ordered him to get symptom-focused treatment. And to us, that is a violation. You can't direct someone to receive a specific course of treatment. You can maintain that they are able to work. You can maintain that they are trying to work. And if he wasn't receiving the treatment, if he wasn't doing what he was supposed to do, they could have denied his continued medical leave of absence. It's not as if their hands were tied in that they couldn't have done something. What they did was they made a directive to him, you have to receive this treatment and provide us with evidence that you received this treatment. Well, if they don't have the right to request that you provide this treatment, they don't have the right to request that you provide evidence that you received that specific type of treatment. Now, if they had made a more generalized allegation against him, you didn't properly communicate with your chain of command, you didn't properly communicate with the Medical Review Board, the issues would have been different and the allegations would have been different. But the specific charge was you did not receive this particular type of medical treatment. And looking back over everything, it seems as though there was an equitable argument that was reached by the Administrative Law Judge. And the Administrative Law Judge looked at it and said, Trooper Bradley probably didn't do a very good job of communicating with his supervisors and communicating with the Medical Review Board. And I'm not necessarily disputing that. However, he was charged with one specific thing. And the question is whether that allegation has been proved, not in general whether he failed to communicate. And I think that those are two different things. And so our argument is if they didn't have the right to force him to get the specific course of treatment, they didn't have the right to force him to present evidence that he got the specific course of treatment. Who was providing that form of treatment? What was the doctor's name? Yeah, there were a couple. He had received the treatment back in 2011. Ultimately, the doctor who certified that he had received it was a doctor named Dr. Koreshi. And the clinic that Dr. Koreshi was with. So he had been providing documentation regarding his medical treatment from everyone and about everything but the focus treatment? I don't think that that's accurate, that he was providing all of the information. It sounded like he wasn't providing any. No, and I don't think that's true. There were communications between Drupal Bradley and the medical review board. There were throughout. And there were requirements that the medical review board had. For example, that he needed to go for a fitness for duty evaluation. I think he went to multiple fitness for duty evaluations. And he did those. He did what they asked. And he did have communications with them. And what do you mean by communications? He talked with, he made phone calls to the colonel, or excuse me, the first deputy, I believe. He made communications with Kathy Parmenter at one point in time who was essentially the equivalent of the EAP. I forget the specific title. What about documentation? As far as documentation, I think what the record reflected was that there was not a lot of documentation that had been provided other than what had been obtained through the fitness for duty evaluation. However, there also wasn't a lot that had been requested. And this is where we get to the two requests that were March 21, 2013 and September 20, 2013. Those are the two requests that are really at issue here. And that was where he provided the evidence that undergo symptom-focused treatment and provide the evidence that he had, in fact, undergone symptom-focused treatment. And, you know, we presented evidence that was rejected by the administrative law judge that he had difficulty obtaining that documentation from Dr. Qureshi. And part of that related to the fact that the individual who was providing him with the treatment at the time was no longer there by the time that the documentation was prepared. And Dr. Qureshi is a psychiatrist. He had received a counselor with the same clinic. So we did address some issues. The administrative law judge rejected those. And that's an evidentiary determination that we're not. There's some credibility, I'm sure, issues that are part of this. I think that there was a determination by the administrative law judge that the fact that he could not obtain the documentation in a timely fashion was his fault. I don't know that they said that it was a lack of credibility. The merit board might have ultimately made that conclusion that they didn't buy that. But I don't believe that there was a finding that the Trooper Bradley was engaged in a pattern of bad faith or anything like that. I think what we had here was we had a communication breakdown. And had they generally charged him with not communicating with his supervisors, the issues in the case, the facts in the case, would have been different. They would have come out differently. But that's not what he was charged with. He was charged with having to undergo the specific type of treatment. And in my view, no employer, governmental employer, can force an employee to undergo a specific course of medical treatment. The affiliate says that that is not the issue because that's not what he was disciplined about. How do you respond to that? Well, Your Honor, I disagree with that because ultimately you can't have one without the other. If he had been given the directive that you have to undergo this type of treatment, he never would have been disciplined. He was disciplined for not providing evidence that he had undergone that specific type of treatment. Not generally that he was disciplined for not communicating, just generally that he did not provide evidence that he had undergone that specific course of treatment. And so to me, it is the issue. And, you know, this goes to the charges that were actually brought against Mr. Bradley. And I do understand the affiliate's point, and I certainly appreciate it. But I do believe that the charges are fairly clear, and they were telling him in that directive, you need to undergo a specific course of medical treatment. Isn't that the treatment that he was planning to do? I mean, how can he be wrong to order somebody to do that which they're agreeing to do? And he did not object to that. He did not object to it. In fact, he actually did have that treatment, and he had had that treatment, I believe, largely before the directives were ever given in 2013. But to us, the directive in and of itself is not a reasonable directive. You cannot direct somebody to undergo a specific course of medical treatment. You can request that they be fit for duty. You can request that they provide documentation from their medical provider in general. You can request that they produce evidence of when they've had treatments. For example, the Family Medical Leave Act requires recertification. You can go through and provide those same sorts of things where a doctor provides a certification of what's going on. The medical review board had every right to insist upon those things. They clearly have every right to insist that he undergoes medical treatment. Or if not, they have a right to insist that he undergoes medical treatment. They have a right to insist that he is fit to perform his job duties. Not only do they have a right, they have an obligation. He's got an important job. Counsel, is this an abuse of discretion standard? On this particular issue, Your Honor, the question is, was this a reasonable rule or policy? I'm talking about the 45 days. The 45 days, the actual amount of discipline, Your Honor, I believe that is a review on abuse of discretion standard. And what is the appellant saying was the reasonable time? The charges, and part of this goes back to the Illinois State Police. The Illinois State Police produces a disciplinary matrix that outlines charges, allegations, violations, and what the appropriate range of punishment is. It's almost like a sentencing guideline. And so this fell in a certain area in the matrix that recommended your first violation of a sentencing insubordination would receive a 15 to 30 day suspension. And that matrix, which is part of the record and was introduced into evidence, in our view, that matrix is designed to ensure that discipline is reasonably consistent throughout the Illinois State Police. Do you have any case law that supports your theory, basically, that you can't deviate from that? I don't. And the case law out of, it seems like most of these cases either come out of the first district or the fourth district, tend to suggest that you cannot, when it's before the courts, the courts cannot go in and compare the discipline that was imposed to one person and that was imposed to another. So to answer your question, I do not. But that having been said, those rules are in effect for a reason, and there is a reasonable time frame, I believe, and employees have a right to equal treatment. And that's sort of the point of the merit board process, is to say that the treatment accorded to employees will be the same. And so when you have essentially a sentencing guideline, you deviate from that to us, and it is an abuse of discretion, because it's getting away from the concept that's fundamental in government employee rights, is that employees be treated equally. And so for those reasons, we would ask that the court reverse. And I'll save the remainder of my argument for rebuttal unless the court has any further questions for me. Thank you, counsel. Thank you very much. Good morning, your honors. Counsel. You may have pleased the court. My name is Kaitlyn Schenender, and I represent the defendants at the lease. Leo P. Schmitz, in his capacity, is the director of the Illinois State Police and the Illinois State Police. I'd first like to address and clarify some questions from the court about the length of time that Bradley was off duty. Beginning in May of 2010 is when he first started using benefit time related to his PTSD. After he, for the remainder of 2010, he was off duty. In 2011, he sat for a fitness for duty evaluation, and it was determined that he could return to work. Over the following week, he sent a letter explaining that he hadn't been released to return to work by his own doctor, and he was still experiencing symptoms related to his PTSD. At that time, the state police asked him to sit for an independent medical evaluation with Dr. Dietrich. Dr. Dietrich evaluated Trooper Bradley, determined that he did have symptoms sounding like he had PTSD, and recommended one month of symptom-focused treatment to alleviate those symptoms. At that point, from 2011 on, Bradley was placed on leave. But now, I understand that he was undergoing that same treatment prior to that recommendation, is that correct? That is correct, yes. I'd like to turn to my first point, that the board's finding that Bradley violated a direct order to provide documentation of his treatment was not against the manifest weight of the evidence. Both the March 2013 and September 2013 letters came from superiors in Bradley's chain of command. Bradley admitted that the March 2013 letter, which advised him that it was his responsibility to coordinate treatment between his mental health provider and Dr. Dietrich, was in order. And he also admitted that the September 13 letter gave him a date certain by which he was to submit documentation confirming that he had completed treatment. It was also not against the manifest weight of the evidence that the MRV had the authority to order Bradley to submit documentation confirming he had received treatment. During the administrative hearing, there was testimony about the purpose of the MRV, and that it was created to help track employees who had been using medical leave and benefit time, and to help them to return to work if they could. The MRV can only accomplish this goal if the employee communicates with the MRV about whether treatment is ongoing or has been completed. The March and September 13 letters, then, were reasonable and necessary for the MRV to do its job. And Bradley admitted in the circuit court that he was not arguing that the MRV does not have the authority to request periodic status reports from physicians. To the extent that counsel has argued that the MRV did not have the authority to order Bradley to undergo specific treatment, we maintain that he has waived this argument. He still has not specified what rule, statute, or constitutional provision this would violate. To the extent he meant to assert a substantive due process argument, he failed to develop that argument or cite any case law in support of it. And, importantly here, Bradley was disciplined for failing to provide documentation to the MRV confirming that he had received treatment, not for failing to obtain treatment. In fact, the hearing officer specifically found that Bradley had completed the recommended treatment, and that finding was adopted by the board. And, again here, Bradley himself testified that he did not believe that the initial June 2011 letter, which told him to seek one month of symptom-focused treatment, was illegal in any way. He said he disagreed with the order, but only because he was already receiving that treatment. And he did not appeal that order to the director, even though he could have. So this is not a case where a state trooper and the state police disagree about the correct treatment that they should be receiving. Bradley was already receiving the treatment that the state police asked him to undergo. The ISP has an interest in not only knowing that its officers are fit for duty, both mentally and physically, but also when they are fit for duty, and able to return to work to sit for a fitness for duty evaluation. As to the second point, the 45-day suspension was not unreasonable, arbitrary, or unrelated to the terms of Bradley's service. The March 2013 letter stated that it had made multiple attempts to contact Bradley, and told Bradley that it was his responsibility to initiate contact between his mental health provider and Dr. Diedrich. Six months later, having not heard from Bradley about whether he had received treatment or completed treatment, ISP sent him another letter, this time specifying that he must complete treatment and provide documentation by October 25, 2013. Bradley did reach out to the ISP a couple of times before that deadline, explaining that he was trying to obtain the documentation, but was having some problems doing so. But he did not provide the documentation by the October 25 deadline. He also didn't ask for an extension of time to comply with the order to provide documentation. And he did not provide any documentation to the ISP until August of 2014, and only after disciplinary charges were brought against him. Thus, Bradley violated a direct order to provide documentation by a specific date, and he violated that order every single day after October 25, until he provided documentation in August. Discipline, a 45-day suspension, was reasonable here. The board was allowed to look at aggregating and mitigating factors, which it did. And specifically, the hearing officer found that there was no reasonable basis for such a lengthy delay in Bradley providing documentation. And then the board stated that Bradley's attempt at blaming his doctor was disingenuous and lacking merit. Discipline is needed in police departments not only to keep order within the department, but to help maintain respect for the public has for the department. Thus, a 45-day suspension for this lengthy delay in providing documentation of his treatment was not unreasonable or unrelated to the terms of Bradley's service as a state trooper. For this reason, we ask that the court affirm the decision of the board. Thank you. Rebuttal? Thank you, Your Honor. I will rest unless the court has any additional questions for me. Any questions? Thank you, counsel. The court will take the matter under advisement and issue a disposition in due course. We'll take a short recess and take up our 10 o'clock meeting. All rise.